**In re 168 ADAMS BLDG. CORPORATION.**

No. 56775.

District Court, N. D. Illinois, E. D.

May 12, 1942.

See, also, D.C., 27 F.Supp. 247.

Bobb, Spoerri, Bourland & Harris, of Chicago, Ill., for Midland Bldg. Corporation.

Thomas J. Courtney and Francis S. Clamitz, both of Chicago, Ill., for County Collector for Cook County.

CAMPBELL, District Judge.

On July 3, 1934, this proceeding was begun for reorganization of Debtor under Section 77B, Bankr.Act, 11 U.S.C.A. § 207. The Debtor was an Illinois corporation owning and operating the building and site known as 168–178 West Adams Street, Chicago, Illinois. The building was constructed during the years 1927-1928 and is a modern 22-story building, with stores, a club and offices, a basement and sub-basement. The first or ground floor contains 3 stores or shops, and club quarters. The rear of the building, slightly below the ground floor, contains a large space rented as a restaurant and bar. From the 1st to the 6th floors, inclusive, the building was designed for club purposes; from the 7th to the 22nd floors, inclusive, it was designed for offices and is now so used. The club floors were leased, upon completion by Debtor to Midland Club, which vacated on or about November 18, 1933, and is no longer functioning. As a result, the 6 floors formerly occupied by the Midland Club remained vacant for some time thereafter; they are now leased for hotel purposes.

As of November 1, 1926, Debtor executed its trust deed to National Bank of Republic of Chicago, as Trustee, mortgaging the property to secure Debtor's issue of $3,250,000, 6¼% Gold Bonds. These bonds were sold to the public and the proceeds purportedly used to construct the building. Debtor also issued $1,000,000 second mortgage bonds dated November 15, 1926, and secured by Trust Deed to Chicago Title and Trust Company. Of this issue $779,100, according to the record, are in the hands of the public. Default took place in the interest due May 1, 1930, on the first mortgage bond issue and foreclosure proceedings were instituted by the Trustee in the Circuit Court of Cook County.

It is not an issue now; but the unmistakable inference from the record is that the whole project was a scheme for the benefit of a few insiders; that of the money received from the public by the sale of the bonds, a large part was wasted by the inefficiency or worse of the original promoters. The design of the property for use as a club seems to have been unfortunate, since there was never a substantial demand for club space of the type in question at that location. The property seems never to have had a fair market value of over $1,500,000, and its market value has decreased so that it is now under $1,000,000 with approximately $500,000 tax arrearages. That a project like this could be conceived and carried out with the tremendous loss to the unfortunate investors is an eloquent answer to those who sigh for the golden pre-1932 days, when this type of business was "unhampered" by governmental supervision. Fortunately for the promoters and their liability, civil and criminal, over 10 years have elapsed and the Statute of Limitations gives them repose, at least so far as the law is concerned.

Foreclosure proceedings took place on the First Mortgage, the complaint was referred to a Master in Chancery, and hearings were had before him lasting over a year and a half. He reported, recommending a Decree. A Decree was entered and an appeal was taken to the Supreme Court of Illinois, National Bank of Republic v. 168 Adams Bldg. Corp., 359 Ill. 27, 193 N.E. 511, which transferred the case to the Appellate Court, where it was affirmed. (Incidentally, the learned Senior Judge of the Circuit Court of Appeals, who previously had acted as District Judge in charge of this case, has pointed out in his opinion of July 1, 1938, that the delay and expense of the reference to the Master in Chancery had no justification, and that in no other jurisdiction would such a proceeding be tolerated.) At length (March 1, 1938, over 3½ years after the Petition was filed) an Amended Plan of Reorganization was submitted herein, which provided (inter alia) for the formation of a new corporation "Midland Building Corporation" with a capitalization of 4% non-cumulative preferred shares, $100 par value, to equal fees and expenses of reorganization, and 350,000 shares common, $1 par value, at the rate of 1 share for $10 of first mortgage indebtedness. There were other miscellaneous small allotments to second mortgagee, and mechanic's lien claims. There was a huge tax delinquency because of general taxes due and unpaid to Cook County, Illinois, and the plan had a special article devoted to this topic and provided that the Court should retain jurisdiction over the new corporation and the property as long as the taxes were delinquent and that the court should enter a restraining order enjoining the collection of such taxes. The article read:

"X. Taxes. The court shall retain jurisdiction over the new Corporation and its property, with respect to general taxes. So long as any taxes against the property of the New Corporation shall be delinquent, the court will control the payment of taxes and any proceedings in connection with the collection and enforcement thereof. The unpaid taxes against the property in the amounts which are fixed and allowed by the court, together with the interest thereon, shall be paid by the New Corporation out of not less than 75% of the net income of the New Corporation after providing for current taxes, or out of the proceeds of a new loan to be made by the New Corporation secured by the property of the corporation, which loan shall be made as soon as the directors are of the opinion that such a loan can safely be carried by the income from the property. In consideration of the allocation, as aforesaid, of the net income and the agreement to procure a new first mortgage loan with which to pay taxes at the earliest possible date, the court shall be asked to enter a restraining order, restraining the various taxing bodies having claims against the Debtor or its property from proceeding against either the New Corporation or its property to enforce the collection of such taxes, so

98

long as the New Corporation faithfully applies the net income from the property in the aforesaid manner."

An order confirming the Plan of Reorganization was entered on April 8, 1938, which order contained an injunction restraining, until further order of Court, the prosecution of the tax claims against the New Corporation or the property. The Plan (except for the tax feature as noted below) has been consummated. Applications for fees and compensation have been filed and passed upon. No final Decree has as yet been entered.

The County Collector of Cook County had filed a claim herein for $434,358.55, covering general taxes for the years up to and including 1938. This claim was allowed by the District Court, 27 F.Supp. 247, on March 14, 1939, in the above sum. The Trustee of the Debtor appealed therefrom to the Circuit Court of Appeals, 7th Circuit, where the case was docketed as "In the Matter of 168 Adams Building Corporation, Debtor (Fritz Steinbrecher, as Trustee, Appellant, v. John Toman, Collector, etc., Appellee), General No. 6927." On June 29, 1939, the Circuit Court of Appeals affirmed the order of the District Court, 105 F.2d 704; petition for rehearing was filed and denied; petition for certiorari was filed with the U. S. Supreme Court and denied, 308 U.S. 623, 60 S.Ct. 378, 84 L.Ed. 520. The order thereupon became final.

The Acting District Judge then in charge of the matter made various allowances of fees in this tax litigation, as follows:

I. Petitions dated March 24, 1939.

Order entered the same day.

(a) Bobb, Spoerri, et al., $5,000 on account.

(b) Arthur Hughes, $5,000 on account

II. Petitions dated February 3, 1940.

Orders entered the same day.

(a) Bobb, Spoerri, et al., $5,000.

(b) Arthur Hughes, $1,250.

(c) McCauley, $3,750.

(d) Graham Aldis, $1,000.

(e) Louis Manierre, $800.

In December, 1940, the Acting District Judge assigned the case to the Executive Committee, and it was re-assigned to me. My connection with the case dates from this date, and the above recitals of the background of the matter are given for

an understanding of the issue before me and the decision I am about to make.

From December, 1940, the case has been continued from time to time on the urgent representation of counsel for the new corporation that arrangements were about to be made to take care of the tax delinquency. In the last 3 years nothing has been paid on account of the above tax claim, as allowed, of $434,358.55, which, with interest, is now approximately one-half million dollars; nothing has been paid on account of the current taxes for the years 1939 and 1940.

On March 19, 1942, the County Collector of Cook County, through the State's Attorney, filed his Petition herein, setting up the unpaid claim of $434,358.55, with interest, the accrual of the taxes for the years 1939 and 1940 for $48,733.50, the provisions of the Plan in regard to taxes, quoted above; that the new corporation had on hand substantial cash balances; that nothing had been paid on account of taxes. Petitioner prays that the new corporation be required to pay the cash on hand on account of current taxes for the years 1939 and 1940, or in the alternative that the jurisdiction of this court over the new corporation be withdrawn and the County Collector be allowed to proceed in accordance with his statutory remedies. The new corporation has filed an Answer thereto in the nature of a confession and supposed avoidance. It does not question the validity of the County Collector's claim (which, as noted above, has been adjudicated by all the courts), and it does not deny that nothing has been paid on account of same or on account of the current taxes. It sets up that the original investors in the bond issue on this building have received no return on their investment for over 10 years and that their only reasonable hope of getting a return is to work out this tax delinquency. This court is, of course, sympathetic with the plight of these unfortunate investors and is disposed to do anything within its power to help them. It also is inclined to believe that the property was probably taxed too high by the Cook County taxing officials during the first years of the last decade. However, the validity of these taxes has been thoroughly litigated, the taxes have been confirmed, and they constitute a first lien upon the property, a lien which the People of the State of Illinois are insisting on enforcing and which they have a right to enforce.

From the examination of the pleadings and evidence heard before me, I observe that the operations for the last three years have resulted as follows:

| Fiscal year ending | Income from Operations | Expenditures | Net Balance | Amount Paid on Taxes |
|---|---|---|---|---|
| September 30, 1939 | $19,046.71 | $18,370.48 | $676.23 | 00.00 |
| September 30, 1940 | 23,371.56 | 22,449.18 | 922.38 | 00.00 |
| September 30, 1941 | 21,877.41 | 33,444.41 | –11,566.70 | 00.00 |

I note further that while during the years ending September, 1939, September, 1940, the operation balance was reduced by the substantial sums paid for fees, etc., in connection with the tax appeals, these fees, totalling over $21,000, but that in the year ending September 30, 1941, when no such fees were paid, there was still an operating deficit of over $11,000.

This, then, is the issue before me. Counsel for the petitioning County Collector seeks an order for the payment of cash or the lifting of the injunction. Counsel for the new corporation object and ask for a further continuation, during which time they "hope" to be able to procure a loan and reduce the tax delinquency in some way not very clearly explained.

As noted above, this proceeding has been in this court for almost 8 years and over 4 years have gone by since the reorganization Plan was approved. Over 16 months have elapsed since the case was assigned to me, during which time I have been continuing the matter from time to time on similar representations of the attorney for the new company, that he "hoped" soon to be able to report some definite solution.

This is an intolerable situation, and I do not believe that Congress, in enacting 77B, ever meant to authorize it. Here is a corporation that for years has enjoyed, and is now enjoying, the benefits and protection of the local government authority without paying anything, either on its huge tax delinquency or even on the current taxes. Neither the letter nor the spirit of the Act justify the court in continuing the matter indefinitely. In these matters there must come a time when the sanctuary of the United States Court must be withdrawn and the enterprise left to stand on its own economic feet. That time has come now.

My conclusion, therefore, is that this matter has already been continued long enough, if not too long, and that unless a fair, feasible and equitable plan with a reasonable likelihood of adoption can be speedily presented, whereby this tax delinquency can be satisfied, that this court should:

(a) Order one-half of the cash on hand applied to current taxes;

(b) Vacate the injunction restraining the County Collector from proceeding to collect.

(c) Enter a final Decree closing the case.

I shall give the parties one final continuance of 30 days to see if they can meet the above requirements. If they cannot, then appropriate orders are to be presented at that time and will be entered.